IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW R. PERRONG<br>1657 THE FAIRWAY #131<br>JENKINTOWN, PA 19046<br><br>Plaintiff<br><br>v.<br><br>BRIEF CALL INC<br>2126 74 ST.<br>BROOKLYN, NY 11204,<br><br>NEW YORK VETERAN POLICE<br>ASSOCIATION<br>D/B/A VETERAN POLICE ASSOCIATION<br>150 NASSAU ST.<br>NEW YORK, NY 10038<br><br>AND<br><br>LOUIS TELANO<br>70 ACAPULCO ST.<br>ATLANTIC BEACH, NY 11509<br><br>Defendants. | Case No.<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

### Preliminary Statement

1. At his Second Inaugural, President Lincoln reaffirmed this nation's commitment "to care for him who shall have borne the battle." Although there are many worthy charities who have as their mission care and advocacy for retired and fallen policemen, the Defendants in this case, despite appearing to be on face, are not one of them.

2. This is so because Defendants have orchestrated an illegal telemarketing scheme to rake in hundreds of thousands of dollars a year under the guise of collecting donations to help retired policemen.

3. In reality, only a fraction of those donations flow to policemen and veterans. The majority flows into the coffers of Telano and professional telemarketers he hired, including, at issue here, Brief Call Inc, who placed calls on behalf of Telano and the VPA.

4. Plaintiff Andrew R. Perrong ("Plaintiff") therefore brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

5. Plaintiff alleges that Defendant Brief Call Inc., at the direction of the New York Veteran Police Association ("VPA") and its principal, Louis Telano, commissioned a series of automated, prerecorded, and illegal telemarketing "robocalls" by sending calls to telephone numbers listed on the National Do Not Call Registry and for which the called party is charged for the calls, like Mr. Perrong's numbers, which is prohibited by the TCPA. The calls were made either directly by Brief Call or their agents at the supervision, direction, and control of the VPA and Telano.

6. The Plaintiff never consented to receive such calls, which were placed to him for telemarketing purposes.

## Parties

7. Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of the Eastern District of Pennsylvania.

8. Defendant Brief Call Inc. is a New York corporation with its registered agent address at 2126 74 St. Brooklyn, NY 11204, which lies within this District.

9. Defendant New York Veteran Police Association, which does business under the name "Veteran Police Association," is a New York nonprofit corporation with its registered agent address at 150 Nassau St. New York, NY 10038, which lies within this District.

10. Defendant Louis Telano is domiciled and resides at 70 Acapulco St. Atlantic Beach, NY 11509, which lies within this District.

## Jurisdiction & Venue

11. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

12. This Court has supplemental jurisdiction over the state law claims as they are part of the same underlying case or controversy as the underlying federal claims, and the facts giving rise thereto are part of the same nucleus of operative facts, the illegal telemarketing conduct complained of herein, per 28 U.S.C. § 1367(a).

13. Venue is proper under 28 U.S.C. § 1391(b)(1) because the Defendants are residents of this District.

## The Telephone Consumer Protection Act

14. In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits all Automated Calls To Protected Numbers

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

16. Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded telephone calls onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

17. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live calls, and such calls can be costly and inconvenient.

18. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

19. This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 623 (D. Md. 2013).

20. "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes telemarketing calls. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

The National Do Not Call Registry

21. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

22. A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

23. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

24. Defendant Brief Call is a professional telemarketer and solicitor who uses automated, prerecorded calls to call individuals at the direction of the principals who hire them.

25. Defendants VPA and Telano hired Brief Call to conduct a telemarketing campaign to solicit "donations" for their nonprofit.

26. None of the defendants are registered as telemarketers with the Attorney General of Pennsylvania.

27. Defendants use automated calls, which used prerecorded voices to send messages, to solicit persons, including Plaintiff.

28. Defendants send out these call blasts *en masse* to telephone numbers throughout the area, hoping they reach someone interested in donating to their sham charity.

The Calls to Mr. Perrong

29. Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

30. Plaintiff's telephone numbers (the "Numbers"), 215-947-XXXX and 215-338-XXXX are on the Pennsylvania and National Do Not Call Registries and have been continuously for more than 31 days prior to the calls.

31. Despite this, the Defendants placed at least three prerecorded telemarketing calls to Plaintiff on April 10, April 14, and Easter Sunday, April 17, 2022.

32. The Numbers are assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls to be placed over a broadband Internet connection.

33. That Numbers, which are assigned to VoIP telephone services, are charged for each call they receive.

6

34. For example, the 947-XXXX number service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

35. The 947-XXXX number service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

36. The Numbers are therefore "assigned to a . . . service for which the called party is charged for the call" and any calls placed to those numbers are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

37. On April 10, 2022 at 12:47 PM, the Plaintiff received a call on his 215-338-XXXX number from the Defendants with the caller ID 215-372-0869.

38. The telephone service provider for this telephone number is Intrado Communications.

39. The Plaintiff did not answer the call, and the caller left no message when the call was sent to voicemail.

40. Despite that, and the fact that he was on the National Do Not Call Registry, the Defendants made another telemarketing call to the Plaintiff.

41. On April 10, 2022 at 5:24 PM, the Plaintiff received a call on his 215-338-XXXX number from the Defendants with the caller ID 215-372-0845.

42. Again, the service provider for this number is Intrado.

43. This time, when the Plaintiff answered, a prerecorded message began playing.

44. The message stated, "Hi. My name is Steve. I'm calling on behalf of the Veteran Police Association, the VPA. The reason for the call is to remind residents that the Veteran

7

Police Association is having its annual drive. Funds raised will help the widows and orphans of officers tragically killed in the line of duty, and also support MADD, Mothers Against Drunk Driving. When you receive your pledge kit, can we count on you to make a commitment to support the Veteran Police Association this year?"

45. The Plaintiff requested that the Defendant send him documentation in the mail regarding the charity to ascertain the identity of the caller and for no other reason.

46. The documentation Plaintiff received identified Defendant VPA, named Defendant Telano as responsible, and also stated that Defendant Brief Call placed the calls at issue.

47. Despite that, and the fact that he was on the National Do Not Call Registry, the Defendants made another telemarketing call to the Plaintiff.

48. On Easter Sunday, April 17, 2022 at 12:12 PM, the Plaintiff received a call from the caller ID 215-710-1458, this time to the 215-947-XXXX number.

49. When the Plaintiff answered, an identical prerecorded message to the one on April 10 was played.

50. The calls were conducted using an Automatic Telephone Dialing System (ATDS) because it would be incongruous for a human to have dialed the call, only to play the caller pre-recorded automated messages.

51. As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

52. The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to dial a number manually, have the Plaintiff answer it, and proceed to play the Plaintiff a prerecorded message.

53. It is evident that Defendants were dialing numbers sequentially because the calls to 215-338-XXXX were both temporally and numerically prior to the call to 215-947-XXXX.

54. It would also be illogical to dial a number other than randomly or sequentially (as from a list) when sending automated, prerecorded calls.

55. At least two of the calls were placed from numbers serviced by the company Intrado. Intrado's website boasts the ability to make calls from the cloud and terminate 15 *billion* telephone minutes per year. *Calling: A Foundation for Collaboration*, INTRADO, https://www.intrado.com/en/cloud-collaboration/calling [https://archive.ph/maCAi].

56. As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, and the fact that the calls sent prerecorded messages, are all indicia of the random or sequential nature of the dialing device that gives rise to the inference at the pleadings stage that an ATDS was used. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021).

57. Plaintiff is ignorant of the exact process by which the system(s) used by the Defendants operate other than drawing the reasonable inference and making the allegation that it stores or produces telephone numbers randomly or possibly sequentially based on the facts ascertainable from the calls he received, as outlined above. Indeed, as at least one district court explained, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS,

9

2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

58. The communications received by Plaintiff demonstrate that they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they sought to have him pay money to a sham charity. Little, if any, of the money Plaintiff would have donated would have actually gone to policemen. Rather, the money would have lined the pockets of Telano and Brief call, including by allowing them to continue blast calling persons and perpetuate their telephone services. The calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

59. Defendants made the automated calls. They either physically programmed the automatic dialer to dial them or instructed others to do the same. In fact, Telano appears to be the mastermind of the entire sham charity operation, and monies "donated" to the VPA actually line his pockets.

60. The Plaintiff never provided his consent or requested these calls.

61. Defendants ignored multiple requests not to be called and indications that the Plaintiff was not interested.

62. The Plaintiff requested to be placed on Defendants' Do Not Call list and receive a copy of Defendants' Do Not Call policy but never received anything.

63. Based on this fact, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law, nor do they maintain an internal Do Not Call list.

64. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phones because his phone lines were tied up during the automated calls and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, these calls injured

Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Legal Claims
### Count One:
### Violation of the TCPA's Prohibition Against Automated Calling Via Pre-Recorded Message

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone numbers of Plaintiff using an artificial or prerecorded voice.

67. As a result of Defendant's and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone numbers for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

68. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

69. The Defendants' violations were wilful and/or knowing.

## Count Two:
## Violation of the TCPA's Prohibition Against Automated Calling
## With an Automatic Telephone Dialing System (ATDS)

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

72. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone numbers for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

73. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an ATDS in the future.

74. The Defendants' violations were wilful and/or knowing.

## Count Three:
## Violation of the Pennsylvania Telemarketer Registration Act
## 73 Pa. Cons. Stat. § 2241

75. By placing at least three telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243.

76. This constitutes three violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

77. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

78. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone numbers in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

79. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

## Count Four:
## Violation of the TCPA's Implementing Regulations
## Codified at 47 C.F.R. § 64.1200

80. By placing at least three telemarketing calls to the Plaintiff, whose numbers are on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendant, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

81. This amounts to nine violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

82. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least six violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's numbers on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

83. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone numbers in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

84. Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from

violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

85. The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

### Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C. Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: **May 17, 2022**

/s/
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com


