IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW R. PERRONG<br><br>       Plaintiff<br><br>v.<br><br>BRIEF CALL INC.<br><br>ET AL.<br><br>       Defendants. | Case No. 1:22-cv-04128-PGG-SN<br><br>JURY TRIAL DEMANDED |

### RESPONSE IN OPPOSITION TO DEFENDANT BRIEF CALL INC'S MOTION TO SET ASIDE DEFAULT

#### INTRODUCTION

Pursuant to this Court's order of December 29, 2022, Plaintiff submits this response in opposition to Defendant Brief Call Inc.'s Motion to Set Aside / Vacate Clerk's Entry of Default. (ECF No. 38). The unique circumstances in this case make clear that the default entered against Brief Call Inc. should not be vacated and the case proceed to final adjudication and judgment.

#### LAW AND ARGUMENT

For more than six months, Defendant Brief Call Inc. wasted both the Plaintiff's and the Court's resources. It did so by by failing to waive service, filing an improper self-styled "motion to dismiss all charges," securing counsel, and then waiting to move to vacate the Clerk's certificate of default after the Court ordered the Plaintiff to move for a default judgment. Rather than timely move to vacate the Clerk's entry of default, Defendant waited until Plaintiff expended substantial resources to seek default in accordance with the Court's directive before filing its Motion. (ECF No. 38).

1

Under FED R. CIV. P. 55(c), the Court *may* set aside an entry of default "for good cause." Importantly, Rule 55's guidance is merely discretionary, not mandatory, and refusal to vacate a default entry under Rule 55 is merely reviewed for an abuse of discretion. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 92 (2d Cir. 1993). *Enron* is particularly instructive. There, the Second Circuit reversed the trial court's refusal to vacate a $257 million default against a *pro se* litigant when the litigant merely failed to answer less than a month after the deadline was an abuse of discretion. *Id*. at 94-95. In so doing, it held that default was an "extreme" sanction for the first offense of such a minor oversight. *Id.* at 92.

Here, by contrast, this is not Defendant's first offense nor the Court's only warning or sanction to the Defendant. The Court ordered Brief Call to retain counsel no later than September 7. But Defendant did not file an answer nor communicate with Plaintiff or the Court about any of the personal issues he was facing. Plaintiff then spent two months drafting and filing all the necessary paperwork for entry of a default and ultimately complied with the Court's order and Your Honor's rules regarding the process for seeking a default judgment. Not until *after* those documents were filed, and *after* Attorney Sulimani entered her appearance in this action, did Brief Call seek to vacate the entry of default.

In deciding whether to vacate the entry of default under Rule 55(c), the court must determine whether the Defendant has articulated "good cause" for its failure to appear. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001). In determining if "good cause" exists, the district court should consider principally "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Id.* None of these three factors are satisfied here.

Defendant's Default was Wilful

Plaintiff is cognizant of the unique challenges that family health crises cause. However, the circumstances here demonstrate that the default was wilful. Brief Call is a corporation and Mr. Brumant is not its only employee or officer. It answered the complaint *pro se* and then disappeared when the Court ordered the Defendant to retain counsel. Mr. Brumant could have explained this situation to the Court or to the Plaintiff, but he did not. In fact, during the time frame between September and October of 2022, the Plaintiff received additional pre-recorded telephone calls from Brief Call placed on behalf of the New York Veteran Police Association at a different telephone number not at issue in the Complaint.[1]

Nor is Brief Call as destitute or unable to afford legal services as Mr. Brumant claims. Publicly available records from the IRS indicate that, of the $530,237 Defendant New York Veteran Police Association collected, $170,712 was paid to Brief Call, and $300,290 was paid to Quick Call, another company owned by Brumant not at issue here. In total, the nonprofit organization retained just $50,892, the vast majority of which went to pay now-deceased Defendant Telano. In essence, Defendant New York Veteran Police Association operated not as a legitimate nonprofit entity but as a piggy bank for Mr. Brumant's call centers.

Moreover, Defendant's conduct further demonstrates malicious intent. Plaintiff received no communications nor any requests of any kind from Attorney Sulimani until well after the Plaintiff filed his motion for default judgment, which is now ripe for disposition. And as stated before, neither Sulimani, Brumant, nor Brief Call undertook any efforts to notify the Court nor the Plaintiff as to their circumstances. *Contra Enron*, 10 F.3d at 93 (detailing communications

---

[1] Mr. Perrong does not currently seek damages for these calls in this particular case. Rather, he intends to file a separate action in the immediate future or in the alternative will move to amend his complaint in the event the entry of default is vacated.

efforts by defendant). The United States Postal Service operates in Puerto Rico. Puerto Rico is connected to the mainland United States telephone system and most, if not all, domestic telephone plans operate in Puerto Rico. And Puerto Rico likewise has internet access from which emails may be sent and received. Mr. Brumant used none of these methods in any attempt to communicate with either Plaintiff or this Court. These facts demonstrate wilfulness.

Defendant Has No Meritorious Defenses

In its motion, Defendant Brief Call broadly asserts two defenses it claims are meritorious. The first is that it was exempt from the TCPA's regulations because it was (1) calling on behalf of a nonprofit organization and (2) the calls were not made for marketing purposes. The second defense is that the Plaintiff lacks standing.

First, courts are increasingly finding that third-party marketing companies hired by nonprofit organizations, as here, are still subject to the provisions of Section 227(c) of the TCPA, particularly, where, as here, the underlying nonprofit is a sham organization. *E.g.*, *Pinn v. Cons. Credit Counseling Found., Inc.* No. 22-CV-04048-DMR, 2023 WL 21278, at *3 (N.D. Cal. Jan. 3, 2023). Even if this Court were to hold that Brief Call qualified for an exemption, that exemption only disposes of the Plaintiff's claims under Section 227(c) of the TCPA with respect to "telephone solicitations" to numbers on the Do Not Call Registry, not Plaintiff's claims under Section 227(b) of the TCPA, which apply to prerecorded calls, regardless of the purpose of the call and apply even if the caller is calling on behalf of a nonprofit organization or for nonmarketing purposes. *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *7 (E.D. Pa. July 15, 2021).

Plaintiff's victory in *Victory Phones* is an addition to the long line of cases holding that calls placed by or on behalf of nonprofits are still prohibited by Section 227(b)(1)(A)(iii) if they

4

are made using an "artificial or prerecorded voice" to one of the enumerated telephone types in that Section. *Rivero v. Am.'s Recovery Sols., LLC*, No. 13 CV 3359 (ENV)(LB), 2015 WL 13731356, at *3 (E.D.N.Y. Nov. 30, 2015); *Barr v. Am. Assn. of Political Consultants*, ___U.S.___, 140 S.Ct. 2335, 2346 (2020) ("Under § 227(b)(1)(A)(iii) ... *[a] robocall that says "Please donate to our political campaign" is illegal.*") (emphasis added). The FCC is also in agreement. In its *Enforcement Advisory: TCP Act Robocall & Text Rules*, it stated, "Prerecorded voice messages and autodialed calls . . . to cell phones and other mobile services such as paging systems are prohibited. This broad prohibition covers prerecorded voice and autodialed calls, including *those sent by nonprofit* or political campaign-related organizations." 31 FCC Rcd 1940, 1941 (2016) (emphasis added).

Defendant's attempts to claim an exemption under 47 C.F.R § 64.1200(a)(3)(iv) for certain non-commercial calls fares no better. This exemption was promulgated pursuant to 47 U.S.C 227(b)(2)(B), which expressly *only* authorizes the FCC to exempt conduct *from 227(b)(1)(B)*. (*See* 47 U.S.C. 227(b)(2)(B) ("the Commission ... may, by rule or order, *exempt from the requirements of paragraph (1)(B) of this subsection*, subject to such conditions as the Commission may prescribe—calls that are not made for a commercial purpose . . . .")) (emphasis added); *Newbold v. State Farm Mut. Auto. Ins. Co.*, N.D.Ill. No. 13 C 9131, 2015 U.S. Dist. LEXIS 194101, at *20-21 (Jan. 23, 2015) ("A closer look reveals that the FCC does not have the authority to create exemptions to the cell phone provisions of the TCPA . . . [§ 227(b)(2)(B) grants] the FCC authority to prescribe regulations to exempt calls from the prohibitions in § 227(b)(1)(B), which covers only calls to residential landlines.")

Defendant's claims that the Plaintiff lacks standing similarly hold no weight. Numerous courts have held that the Plaintiff specifically has standing. *See, e.g.*, *Victory Phones*, 2021 WL

3007258, at *6 ("The injury which confers statutory standing exists regardless of the fact that Mr. Perrong's name has previously appeared on the left side of the "v." His decision to pursue his rights under the TCPA "should not negate otherwise privacy interests simply because [he] may be motivated to sue by the TCPA's damages provisions."); *Perrong v. Total Ins. Brokers, LLC*, No. 8:20-CV-1905-JSM-TGW, 2021 WL 3036467, at *3 (M.D. Fla. Apr. 2, 2021) ("The amended complaint adequately alleges Perrong's standing because he received more than one unwanted robocall."); *Perrong v. Quoteqizard.com, LLC*, No. 20-CV-2506, 2020 WL 5039445, at *4 (E.D. Pa. Aug. 26, 2020) ("Plaintiff has adequately alleged facts which, taken as true, would confer standing to sue upon him pursuant to Article III.") Furthermore, in enacting the TCPA, Congress created a legally protected interest against harassing telephone calls, and as an individual seeking to hold a defendant liable for violations of that interest, Plaintiff has standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014).

Plaintiff Would Be Prejudiced From Vacating Default

In this case, one Defendant, New York Veteran Police Association, remains in default. Although the Plaintiff acknowledges the Second Circuit's preference for deciding cases on the merits. However, vacating the default leaves in limbo the status of yet another defaulting party which has not yet appeared. Consequently, this raises issues of collectability, disparate liability, and the risk of conflicting judgments. Moreover, it would provide a powerful incentive for New York Veteran Police Association to benefit from Brief Call's arguments, even if it is more liable than Brief Call or if different arguments apply.

Spoliation is likewise a severe concern in cases like this. Not all telecommunications companies, including the companies that are used to engage in automated telemarketing, keep records of telephone activities for any appreciable length of time, and without an immediate

gathering of records, the likelihood of destruction of this evidence increases with each passing day. As detailed in a chart issued by the Department of Justice, many of the major telecommunications providers will only retain call record information for 12-18 months, and smaller telecommunications providers keep this information for an even shorter period of time. *Retention Periods of Major Cellular Service Providers*, U.S. DOJ (Aug. 2010).

This risk to Plaintiff's interests is not merely hypothetical. Multiple decisions have turned on the destruction of telephone records. For example, in *Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078, at *2 (D. Md. May 25, 2007), the court denied class certification in a TCPA fax case because "critical information regarding the identity of those who received the facsimile transmissions" was not available. Likewise, in *Pasco v. Protus IP Sols., Inc.,* 826 F. Supp. 2d 825, 831 (D. Md. 2011), the court was compelled to grant the defendant's motion for summary judgment where plaintiffs were unable to obtain the "transmission data on which to support their claims that [the defendant] sent them the unsolicited faxes at issue." Nevertheless, in the event the Court does vacate the entry of default, the Plaintiff requests that it retain the entry of default against and proceed to final judgment against Defendant New York Veteran Police Association, which has still neither appeared nor defended in any manner.

## CONCLUSION

For the foregoing reasons, the Plaintiff respectfully requests that the Court DENY Defendant Brief Call's Motion.

Dated: January 6, 2023

_____/s/_____
Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046

Phone: 215-791-6957  
Facsimile: 888-329-0305  
andyperrong@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2023, I electronically served the foregoing on counsel for the Defendant Brief Call Inc. via the ECF system, which will send an electronic notification to the same.

By: <u>/s/ Andrew R. Perrong</u>  
Andrew R. Perrong