NATALIE SULIMANI, ESQ., # SN1054
75 MAIDEN LANE STE # 802
NEW YORK, NY 10038
natalie@sulimanilawfirm.com
(212) 863-9614

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**
……………………………………………..x

|  |  |
|---|---|
| | Case No. 1:22-cv-04128-PGG |
| ANDREW R. PERRONG | **DEFENDANT BRIEF CALL** |
|     Plaintiff, | **INC.'S REPLY TO PLAINTIFF'S** |
| | **OPPOSITION TO MOTION TO** |
| v. | **VACATE CERTIFICATE OF DEFAULT** |
| BRIEF CALL INC, | |
| NEW YORK VETERAN POLICE | |
| ASSOCIATION | |
| (d/b/a VETERAN POLICE | |
| ASSOCIATION), | |
| and LOUIS TELANO | |
|     Defendants. | |

……………………………………………..x

    COMES NOW, Defendant BRIEF CALL INC., though counsel Natalie Sulimani Esq., and submits the following Reply to Plaintiff's Opposition to Motion to Vacate Certificate of Default ("Opposition"). Defendant reincorporates all arguments and assertions included in his Motion To Vacate Clerk's Certificate of Default.

1

I. **PLAINTIFF'S OPPOSITION**

Plaintiff begins his Opposition by asserting that the Defendant has "wasted both the Plaintiff's and the Court's resources." This allegation is untrue as evidenced by the Defendant's Motion and Affidavit explaining his reasons for the delay.

Plaintiff's primary arguments in opposition to the vacation of default are that the Defendant;

> 1. failed to waive service
> 2. filed a pro se motion to dismiss all charges;
> 3. secured counsel;
> 4. waited to move to vacate the clerk's certificate of default after the Court ordered the Plaintiff to move for a default judgment.

The Plaintiff's opposition as it relates to the first and third claim are moot. The Defendant was and is under no obligation to waive service; and securing counsel actually works in favor of vacating default, not against it. The Defendant's Motion to Dismiss was addressed by the Court when it struck it and ordered him retain counsel by September 7th, 2022. The Defendant did not retain counsel in accordance with the Court's order, and the Clerk rightfully issued a Certificate of Default.

Just one week after the Plaintiff obtained default, Ms. Sulimani filed notice of appearance. Two weeks later, Defendant filed his Motion to Vacate. This Motion to Vacate comes four days after the Plaintiff filed a Proposed Order to Show Cause with a declaration; and two weeks after Ms. Sulimani's appearance. The Proposed Order to Show Cause only filed AFTER a Notice of Appearance by counsel was filed.

The Plaintiff argues against vacatur of default on several more erroneous grounds. As a preliminary matter, the standard of review in the second circuit for a vacatur of default is:

> A court may vacate a Certificate of Default where the default resulted from "mistake, inadvertence, surprise, or excusable neglect." Id. (quoting Fed. R. Civ. P. 60(b)(1) (internal quotation marks omitted)). In deciding whether vacatur is justified, "the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non defaulting party prejudice.'" New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005) (quoting State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 166-67 (2d Cir. 2004)). In light of the "[s]trong public policy" in favor of "resolving disputes on the merits," American Alliance Insurance Co. v. Eagle Insurance Co., 92 F.3d 57, 61 (2d Cir. 1996),

2

Notably as well:

> "all doubts must be resolved in favor of the party seeking relief from the [default]." *Green,* 420 F.3d at 104.

The Plaintiff states in his opposition that the case of <u>Enron Oil Corp. v. Diakuhara,</u> 10 F.3d 90, 92 (2d Cir. 1993), is "particularly instructive here." Ignoring for now that the fact pattern and procedural histories between the cases are entirely different and focusing solely on the Court's "instructions", is it quite evident that this case works against the Plaintiff.

The court in *Enron* discusses the legal standard for setting aside default. It states that:

> "The dispositions of motions for entries of defaults and default judgments and relief from the same under Rule 55(c) are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."

> "The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits." Id.

The Court in *Enron* proceeds further to "instruct" (according to the Plaintiff) this Court on the "oft stated preference" by stating that;

> "We recognize the tension that exists between the push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously, which cases delay and clog its calendar, on the one hand; and the strong pull on the same trial judge to do justice in the individual case, on the other hand. But an understandable zeal for a tidy, reduced calendar of cases should not overcome a court's duty to do justice in the particular case. It is the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard."

Finally, the Court "instructs" us that;

> "because defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party. In other words, "good cause" and the criteria of the Rule 60(b) set aside should be construed generously." Id. (emphasis added).

Beyond the Court's "instructions" in *Enron*, it also provides a decision criticizing the district judge for not setting aside default. They note that;

> "In refusing to set aside the entry of default solely on the basis of Fuchs' untimely response to Enron's default application, the district court also failed to consider other important circumstances. It did not acknowledge, for example, Fuchs' then status as a pro se litigant…Further, defaults, as earlier explained, are particularly disfavored by the law when substantial rights are implicated, see, e.g., Klaprott v. United States, 335 U.S. 601, 611-12, 69 S.Ct. 384, 388-89, 93 L.Ed. 266 (1949), or when substantial sums of money are demanded."  (emphasis added; fn.4)

Plaintiff's reliance on Enron is erroneous as a matter of law as this case repeatedly contradicts his positions. His direction to the Court that this case is "particularly instructive" only shows the difficulty he had in supporting the arguments within his response; as the instructions in Enron related to default heavily support the Defendant's position.  In applying the *Enron* case, the default should be set aside.

The Plaintiff's complaints about the passage of time are also moot, again, according to the case he relies upon; "delay standing alone does not establish prejudice….(when vacating a default judgment, "delay alone is not a sufficient basis for establishing prejudice"). Id.

The only other prejudice asserted by the Plaintiff is spoliation of evidence. Although he claims that his asserted prejudice is "not hypothetical", that is precisely what it is. He makes that clear by stating that:

> "Although the Plaintiff acknowledges the Second Circuit's preference for deciding cases on the merits. However, vacating the default leaves in limbo the status of yet another defaulting party which has not yet appeared. Consequently, this raises issues of collectability, disparate liability, and the risk of conflicting judgments. Moreover, it would provide a powerful incentive for New York Veteran Police Association to benefit from Brief Call's arguments, even if it is more liable than Brief Call or if different arguments apply."

Defendant Brief Call Inc. has no authority to order the other Defendants to appear and has no control over what hypothetical incentives vacating default may provide for them. Second, as previously mentioned, the Plaintiff fails to acknowledge his own delays in litigating this case; as this Court previously noted in Gunnells v. Teutal;

4

> "Plaintiff argues that he will be prejudiced by a vacatur of the default judgment because of the considerable time and expense he has dedicated to prosecuting this case. Much of this time and expense, however, is attributable to plaintiff himself." <u>Gunnells v. Teutul,</u> 469 F. Supp. 3d 100 (S.D.N.Y. 2020).

The Plaintiff's argument related to spoliation of evidence points only to prior cases which are not parallel and notably not even from this Circuit, let alone District. He then merely recites what happened there, inferring that it could happen here. This is the definition of hypothetical and nowhere in his response does the Plaintiff assert any evidence of actual prejudice related to this case or which he has suffered. The Plaintiff also cannot reasonably argue that he is prejudiced by this short passage of time when he used practically all of it trying to get a default certificate.

The Plaintiff's response, again in contradictory fashion; "acknowledges the Second Circuit's preference for deciding cases on the merits", but then proceeds to cite cases from the District of Maryland and the Fourth Circuit, in order to persuade this Court to ignore this preference.

The Plaintiff's final argument, that the Defendant does not have a meritorious defense, is equally failing. As the Court in *Enron* instructs:

> "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense. See, e.g., *Sony Corp.*, 800 F.2d at 320-21. The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense."

The Plaintiff spends much of his response arguing against the defenses raised by the Defendant in his Motion; all while completely missing the standard. The Defendant is not required to prove his defenses at this stage or even show that they may prevail;

"Rather, a defendant's "allegations are meritorious if they contain 'even a hint of a suggestion' which, if proven at trial, would constitute a complete defense." <u>Sea Hope Navigation Inc. v. Novel Commodities SA</u>, 978 F. Supp. 2d 333, 339 (S.D.N.Y. 2013). (Importantly, "[l]ikelihood of success is not the measure."). Id.

All parties must agree that; "even a hint of a suggestion", is about as low of a standard as can be. Here, the Defendant has provided multiple defenses which meet and exceed this standard:

The Plaintiff's Complaint alleges multiple Title 47 violations against Brief Call Inc., and one allegation of violating 47 CFR § 64.1200. The FCC's rules and regulations are located in Title 47 of the Code of Federal Regulations (CFR).

First, Title 47 § 227 suggests that the FCC "shall prescribe regulations to implement the requirements of this subsection." In implementing the requirements of this subsection, the [FCC]: may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe— (i)calls that are not made for a commercial purpose; and (ii) such classes or categories of calls made for commercial purposes as the Commission determines— (I) will not adversely affect the privacy rights that this section is intended to protect; and (II) do not include the transmission of any unsolicited advertisement;

The Plaintiff's Complaint relies almost entirely on alleged telephone solicitation violations related to Title 47 § 227 . However, the FCC has expressly exempted the Defendant from this exact statute as he operates a non-profit, on behalf of another non-profit. Both 47 U.S.C. § 227(a)(4); and 47 C.F.R. 64.1200(f)(14)(iii) (the "Nonprofit Exemption"); exempt the Defendant from the statute in plain language. They both read that;

> The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, *but such term does not include a call or message:*
>
> (iii) <u>By or on behalf of a tax-exempt nonprofit organization.</u>

Mr. Perrong admits himself that Defendant Brief Call Inc. placed the calls "at the direction of the New York Veteran Police Association a tax-exempt non-profit) and its principal, Louis Telano…" He further states that "The calls were made either directly by Brief Call or their agents at the supervision, direction, and control of the VPA."

Here, the Plaintiff admits that the telephone solicitations he complains of and seeks damages from were made entirely by non-profit organizations who are explicitly exempt from the exact statute he is seeking to recover under. This defense alone is meritorious.

The Defendant also asserts that the Plaintiff lacks standing to bring this action. Mr. Perrong's response to this assertion is to once again cite irrelevant case law in support. His reference to his own prior cases are not persuasive here and do nothing to further his argument of standing:

"A plaintiff has standing to bring an action, when he "demonstrate[s] that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ). "Injury in fact" means "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Donoghue v. Bulldog Investors General Partnership, 696 F.3d 170, 175 (2d Cir. 2012)(quoting Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130 ). In addition to these requirements, Courts also impose prudential standing requirements, including the need for a plaintiff to demonstrate that a claim falls "within the zone of interests protected or regulated by the" statute or provision under which the suit is brought. Bennett, 520 U.S. at 162, 117 S.Ct. 1154 (citing Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) )."

In this case, as was not the case in the Plaintiff's prior matter, the Defendant is a non-profit and tax exempt organization. It is in fact impossible for the Plaintiff to have standing in this matter according to the foregoing authority when his claim clearly does not fall "within the zone of interests protected or regulated by the" statute or provision under which the suit is brought." Id.

As the Defendant has sufficiently shown, he is in fact exempt from the statute "under which the suit was brought". Moreover, whether or not Mr. Perrong lacks standing is not the question. The question is whether or not the Defendant has provided "even a hint of a suggestion" which, if proven at trial, would constitute a complete defense." The Defendant has done this on multiple fronts; not to mention the numerous other defenses that could be raised in a responsive pleading; the deficiencies in the Plaintiff's claims; and the fact that the Defendant's statutory exemption from the Plaintiff's claims means this court lacks jurisdiction and likely warrants a Motion to Dismiss which the Defendant intends to file upon vacatur of default; in part on the following grounds:

In the 2003 FCC Order that established the National Do Not Call Registry, the FCC also addressed the scope of the Nonprofit Exemption. (See 18 FCC Rcd. at 14087-14090). The FCC noted that it had received inquiries about "calls made jointly by nonprofit and for-profit organizations" and that it had requested public comments concerning the scope of the Nonprofit Exemption. (Id. at 14087-14088, ¶126).

7

After considering the comments, the FCC confirmed that "calls made by a for-profit telemarketer hired to solicit the purchase of goods or services or donations on behalf of a tax-exempt nonprofit organization are exempted from the rules on telephone solicitation." Id. at 14089, ¶128.

The FCC recognizes that charitable and other nonprofit entities with limited expertise, resources and infrastructure, might find it advantageous to contract out its fundraising efforts. Consistent with Title 47 § 227, a tax-exempt nonprofit organization that conducts its own fundraising campaign or hires a professional fundraiser to do it, will not be subject to the restrictions on telephone solicitations.

The Plaintiff's attempt to win this case procedurally must fail. No judgment of default has been entered by the Court and the Defendant has come forth with good cause for his default and multiple meritorious defenses. Moreover, the Plaintiff fails to allege any concrete prejudice outside of the hypothetical scenarios created by fact patterns from cases heard in another Circuit.

**WHEREFORE**, in consideration of the Defendant's Motion to Vacate and the Affidavit attached thereto, the Plaintiff's Response, and this Reply; the Defendant reiterates his request that the Clerk's Certificate of Default in this matter be set aside so that this case may proceed on it's merits.

Dated: January 11th, 2023

/s/ *Natalie Sulimani*
Natalie Sulimani, Esq.
Attorney for Defendant Brief Call Inc.

**CERTIFICATION**

I hereby certify that a true and correct copy of DEFENDANT BRIEF CALL INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO VACATE CERTIFICATE OF DEFAULT was served on the Plaintiff via Pacer CM/EMF and via electronic mail using the following information of court record below:

Andrew R. Perrong
Plaintiff; Pro Se
1657 The Fairway #131
Jenkintown, PA 19046
Tel. 215-791-6597
Fax. 888-329-0305
andyperrong@gmail.com

Dated: January 11th, 2023.

/s/ *Natalie Sulimani*
Natalie Sulimani Esq.
*Attorney for Defendant Brief Call Inc.*