UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

……………………………………………….x

ANDREW R. PERRONG

    Plaintiff,

v.

BRIEF CALL INC, NEW YORK VETERAN
POLICE ASSOCIATION (d/b/a VETERAN
POLICE ASSOCIATION), and LOUIS
TELANO.

    Defendants.
…………………………………………….. x

Case No. l:22-cv-04l28-PGG

**DEFENDANT BRIEF CALL'S
OBJECTION TO PLAINTIFF'S
MOTION FOR DEFAULT**

    Defendant Brief Call Inc., ("Brief Call"), comes now and hereby requests that the Court deny the Plaintiff's Motion for Default. *Dkt 51*. On May 10, 2024, the Court granted Brief Call's Motion to Stay Proceedings pending settlement negotiations. Counsel for Brief Call and the Plaintiff did negotiate, and made settlement offers back and forth. No formal agreement was reached. A "proposed agreement" from Plaintiff was sent to Counsel, reviewed, and ultimately declined by Brief Call. Plaintiff has asserted that the parties reached a "contract", and that the proposed settlement agreement must be enforced.

    Brief Call disagrees for the reasons set forth below, and therefore requests that the Plaintiff's Motion be denied and that this case be decided on its merits.

## I. BACKGROUND

    Plaintiff Andrew Perrong brought this TCPA action against Defendant Brief Call Inc., alleging in relevant part that that Brief Call "at the direction of the New York Veterans Police Association… commissioned a series of automated, prerecorded, and illegal telemarketing calls

1

to telephone numbers listed on the do-not-call registry and for which the party is charged for the calls…" Compl. ¶ 5. Plaintiff further alleges that "[T[he calls were made using an Automatic Telephone Dialing System ("ATDS")", (id at ¶ 50), and that "the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator to produce numbers to be called using a random or sequential number generator." Id at ¶ 51. Plaintiff admits that he is "ignorant of the exact process by which the system(s) used by the defendants operate…" Id at ¶ 57. Finally, plaintiff further admits that "[defendants] either physically programmed the automatic dialer to dial them or instructed others to the same." Id at ¶ 59.

## II. LEGAL STANDARDS

**1. Default Judgement:**

Default judgments are generally disfavored and there is "[a] clear preference . . . for cases to be adjudicated on the merits. Therefore, in ruling on a motion to vacate a default judgment, all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on the merits." *Nevels v. City of New York*, 21-CV-10074 (JPO), at *2 (S.D.N.Y. June 3, 2022).

**2. Settlement Agreements:**

A long line of precedent supports the view that ***state law customarily governs the validity, enforcement, and interpretation of settlement agreements***. One bankruptcy court, expressing the prevailing rule observed by Federal courts, has stated that "***the validity or enforceability of a settlement agreement in court proceedings is regulated generally by State law***." *In re Chism,* 57 B.R. 23, 27 (Bkrtcy. M.D. Ala. 1985) (citing *Wong v. Bailey,* 752 F.2d 619 (11th Cir. 1985)). *See also In re Beverly Hills Bancorp v. Commercial Paper Holders,* 649

F.2d 1329, 1332 (9th Cir. 1981) (settlement agreement is a contract to be construed under state law); *In the Matter of the Hawaii Corp.,* 796 F.2d 1139, 1143 (9th Cir. 1986) (interpretation of settlement agreement governed by the Hawaiian law of contracts); *Glazer v. J.C. Bradford Co.,* 616 F.2d 167, 169 (5th Cir. 1980) (state law controls whether a contract of settlement was made in diversity suit); *Lewis v. Transload and Transport, Inc.,* 642 F. Supp. 865, 867 (E.D. La. 1986) (construction and enforcement of settlement agreements governed by principles of state law); *In re Tidewater Group, Inc.,* 8 B.R. 930, 931 (Bkrtcy. N.D. Ga. 1981) (construction of oral settlement agreement in bankruptcy action controlled by Georgia law); *In re Kealoha,* 2 B.R. 201, 208 (Bkrtcy .D. Haw. 1980) (settlement agreements are contracts governed by contract law).

**3. New York State Law:**

C.P.L.R. 2104 provides as follows:

> An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in writing subscribed by him or his attorney or reduced to the form of an order and entered.

> This section clearly applies to settlement agreements. *In re Dolgin Eldert Corp.,* 31 N.Y.2d 1, 334 N.Y.S.2d 833, 286 N.E.2d 228 (1972).

### III. ARGUMENT
### 1. The Parties Never Formally Executed a Settlement Agreement

Plaintiff is likely to reply to this memorandum arguing that the parties reached a settlement agreement under the law, and that the Court should enforce said agreement. However, no settlement agreement was executed by the defendant, the agreement was not reduced to writing, no party has moved for a voluntary dismissal, and no party has even begun to prepare

3

the necessary paperwork formalizing the settlement offer. In sum, plaintiff has not relied upon the alleged settlement agreement in any meaningful way and numerous steps remain to be taken before any "agreement" could be submitted to and approved by the Court… "A contract is ***not made*** so long as, in the contemplation of the parties, something remains to be done to establish the contractual relation.")." *Britto v. Salius*, 360 F. App'x 196, 198 (2d Cir. 2010). This Court has articulated a presumption that "[s]ettlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Id. See also *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 326 (2d Cir. 1997).

As the plaintiff himself acknowledges in the parties' communications, he sent a "*proposed* agreement" on May 21, 2024. Counsel was unable to formally respond but informed plaintiff on May 31, 2024 that she would "*review* the draft agreement." Counsel did review the draft agreement, discussed further options with her client, conducted further research, and ultimately, Brief Call decided to reject the plaintiff's offer. Nowhere in this sequence of events does plaintiff assert that Counsel approved his proposed agreement, in fact, the opposite is true, Counsel said that she would *review* it. It was after this review and rejection of the proposed agreement by Counsel that the Plaintiff accused Brief Call of "breaching the contract," despite the fact that Brief Call did not agree to it in the first place. In applying common contract law, the statute of frauds states in relevant part, that:

> [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking . . . [b]y its terms is not to be performed within one year from the making thereof." *Sears, Roebuck and Co. v. Sears Realty Co.*, 932 F. Supp. 392, 401 (N.D.N.Y. 1996).

Accordingly, any alleged agreement between the parties in this matter meeting the foregoing criteria must be memorialized in writing, and no such documentation exists, as "[E]ven if the court concludes that the parties to the instant case reached an oral settlement agreement, the agreement is *unenforceable* because it violates the statute of frauds." Id.

The case of *Sears, Roebuck and Co.,* continues to mirror the fact pattern surrounding settlement in the instant case, thus providing the Court with substantial instruction on determining the formation and enforceability of any alleged "agreement"; stating that:

> The record presently before the court adequately demonstrates that the parties did not literally comply with § 2104 because *the alleged settlement agreement is not evidenced by a writing signed by plaintiff*, and *no agreement was made by the attorneys in open court*. CPLR § 2104 specifically requires that an agreement be in a "writing subscribed by [a party] or his attorney. Neither party disputes that *the settlement negotiation process failed to produce a document* signed by *both* parties embodying the terms of the agreement."

Plaintiff cannot show that he relied on the alleged agreement in any meaningful way or that any such reliance caused any significant injury.

## IV. <u>CONCLUSION</u>

Default should certainly not be granted in this matter in accordance with the Court's preference for deciding cases on their merits. Moreover, there was no enforceable contract formed between the parties under New York Law, and any alleged contract would undoubtably violate the statute of frauds regardless.

Defendant therefore requests that the Court deny default judgement to the Plaintiff, accept the Defendant's Answer filed concurrently with this Memorandum, and that the parties proceed to discovery.

Dated: June 10, 2024

/s/ *Natalie Sulimani*
Natalie Sulimani
Federal Bar No. SN1054
natalie@sulimanilawfirm.com
Direct: 212.863.9614
75 Maiden Lane, suite 802
New York, NY 10038

**Certification:**

I hereby certify that on June 10, 2024, a true and correct copy of this *Objection to Plaintiff's Motion for Default* was served upon Plaintiff Andrew Perrong via Pacer ECF:

Andrew Perrong
1657 The Fairway #131
Jenkintown, PA 19046
(215) 791-6957
andyperrong@gmail.com

/s/ *Natalie Sulimani*
Natalie Sulimani

6