IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDREW R. PERRONG<br><br>   Plaintiff<br><br>v.<br><br>BRIEF CALL INC.<br><br>ET AL.<br><br>   Defendants. | Case No. 1:22-cv-04128-PGG-SN<br><br>JURY TRIAL DEMANDED |

**MEMORANDUM IN SUPPORT OF**
**MOTION TO ENFORCE SETTLEMENT AGREEMENT**

  COMES NOW Plaintiff Andrew R. Perrong, and files this Motion to Enforce Settlement Agreement, and in support thereof states as follows:

**BACKGROUND**

  This Motion assumes the Court's familiarity with the basic facts of this case. Of importance here, on May 19, 2022, the Plaintiff filed the instant lawsuit against the Defendants, including Defendant Brief Call Inc., alleging various violations of the Federal Telephone Consumer Protection Act (TCPA). (ECF No. 1). After various default-related motions practice made by the *pro se* corporate Defendant, the Defendant moved to dismiss the case on May 4, 2023 (ECF No. 44). On August 7, 2023, the Court issued its report and recommendations to deny the Defendant's motion. (ECF No. 48). Despite objecting, the Court adopted the report and recommendations in full on March 29, 2024 (ECF No. 50). Defendant did not answer the Complaint, and so the Plaintiff moved for entry of default on April 26, 2024. (ECF No. 51). This

1

Court entered an order directing the Defendant to file any opposition to the Motion by May 10, 2024. (ECF No. 52).

Behind the scenes, as evidenced in Exhibit A, a day after the Court issued its April 29 order, counsel for the Defendant emailed the Plaintiff offering him a monetary payment to settle the matter. The Plaintiff provided a counter offer and the parties negotiated, agreeing on the basic contractual terms, with both parties confirming that they had a settlement agreement "in principle" and confirming that fact on the Court's docket by requesting the Court to stay the proceedings as the parties "have agreed on a settlement in principle." (ECF No. 53). The Court entered an order staying the proceedings and retaining jurisdiction until June 10, 2024, in a minute entry dated May 13, 2024. The Defendant now acts as if no agreement ever formed and as if no default was ever moved for. This response follows.

## LAW AND ARGUMENT

### A. This Court Should Order Specific Performance Because it has the Inherent Power To Enforce The Agreement

"A settlement agreement is a contract that is interpreted according to general principles of contract law." *Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007). "A trial court has inherent power to enforce summarily a settlement agreement when the terms of the agreement are clear and unambiguous." *Omega Engineering, Inc. v. Omega, S.A.*, 432 F.3d 437, 444 (2d Cir. 2005). A settlement agreement is enforceable if there is "an offer, acceptance, consideration, mutual assent and intent to be bound." *Registercom, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). For a contract to be enforceable, there must be mutual assent "on all essential terms," often referred to as a "meeting of the minds." *Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 372 (2d Cir. 2003). Essential terms are "all the issues perceived to require negotiation." *Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005). Where "a contract is unambiguous, the

instrument alone is taken to express the intent of the parties." *Klos v. Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997).

As the attached Exhibit A indicates, the Plaintiff and counsel for the Defendant Brief Call Inc. negotiated extensively through early May regarding settlement of this matter and had an agreement on all the essential terms via email, to be memorialized in a formal, written agreement, as is the norm in most every negotiation setting a lawsuit. This included negotiations as to the extent of the Defendant's bargained for consideration, as well as the terms of payment requiring structuring of payment over three months. In return, the Plaintiff agreed to dismiss his lawsuit with prejudice. Counsel for the Defendant confirmed this agreement, stating that "we have a settlement in principle" both in writing as well as via a filing with the Court. (ECF No. 53). This statement, as well as that counsel made to the Court, belies the Defendant's assertion now that "no formal agreement was reached." (ECF No. 55).

"Settlement agreements to end litigation are strongly favored by courts and are not lightly cast aside. Once reached by the parties, settlement agreements are binding and enforceable." *Palmer v. Cnty. of Nassau*, 977 F. Supp. 2d 161, 165–66 (E.D.N.Y. 2013). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011). This includes agreements written in an email. *Green v. N.Y.C. Transit Auth.*, No. 15-CV-08204 (ALC) (SN), 2022 WL 2819738, at *2 (S.D.N.Y. May 10, 2022); *see also Elliot v. City of N.Y.*, No. 11-CV-7291 (RWS), 2012 WL 3854892, at *2 (S.D.N.Y. Sept. 5, 2012) (finding an executed term sheet and email from defense counsel confirming agreement was sufficient to create a binding agreement).

Here, the intention of the parties could not have been clearer and there is no question that an agreement settling this litigation formed on May 10, 2024. The material terms were such that the Plaintiff would receive an agreed-upon monetary payment, payable over three months, in exchange for a dismissal of the Defendants with prejudice from the lawsuit. As the above authorities dictate, emailed negotiations and agreements as to the essential terms of a settlement suffice to form a contract. All that was left was for the parties to sign a formal agreement memorializing the contract and succinctly reducing the parties' obligation and performance.

Contrary to the Defendant's contention, the settlement was plainly not conditioned on any further occurrence, such as the formal execution of a settlement agreement. The agreement sent to counsel for the Defendant was simply a boilerplate settlement agreement and release, as is the norm, that memorialized the parties' agreement and intent to be bound. It does not change the fact that the parties agreed via email negotiations to settle this matter for a monetary payment in exchange for dismissal of the Plaintiff's claims against Defendants with prejudice.

The terms of C.P.L.R. 2104, which *do not even apply here* as this is a Federal lawsuit proceeding in federal question jurisdiction, not diversity, nevertheless does not dictate a contrary result. The Second Department has consistently affirmed that emails between counsel agreeing to settle a matter are sufficient to satisfy the writing and signature requirement of Rule 2104. *See, e.g.*, *Forcelli v. Gelco Corp.*, 972 N.Y.S.2d 570 (N.Y. App. Div. 2013); *Herz v. Transamerica Life Ins. Co.*, 99 N.Y.S.3d 664, 665 (N.Y. App. Div. 2019).

Nor is the statute of frauds even applicable in this case. The statute of frauds is codified in N.Y. GEN. OBLIG. § 5-701. No part of that statute applies to settlement agreements where the period of performance is limited to one year or less, as here. The agreement here also does not otherwise implicate the statute, as it is not an agreement entering into a fiduciary relationship, for

4

insurance policy, or for negotiating a loan or real estate. But even if it did, the statute of frauds still does not apply here because the agreement was *in writing* and was not an oral agreement. It is well-settled that even an oral settlement agreement suffices under the statute of frauds, so long as the period for enforcement is no longer than a year or the subject matter of a compromise falls within the statute of frauds, such as a real estate transaction. 15B AM. JUR. 2D COMPROMISE AND SETTLEMENT § 16.

"The intention of the parties on this issue is a question of fact, to be determined by examination of the totality of the circumstances." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d 1997). As the attached Exhibit A demonstrates, counsel for the Defendants was acting in manifestly bad faith by using the Second Circuit's recent perceived adverse decision in *Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.* to seek a reduction in the bargained-for consideration thereunder. 101 F.4th 176 (2d Cir. 2024). But that argument neglects the fact that the Second Circuit decided *Soliman* on the morning of May 10, 2024, well before the parties entered into the agreement that afternoon, memorialized it in that filing later that day, and *reaffirmed* their agreement as recently as May 31.

"[A] court may vacate a stipulation of settlement only upon a showing of good cause, such as fraud, collusion, mistake, duress, lack of capacity, or where the agreement is unconscionable, contrary to public policy, or so ambiguous that it indicates by its terms that the parties did not reach agreement." *Rispler v. Spitz*, 377 F. App'x 111, 112 (2d Cir. 2010). None of these factors apply here and the Defendant has admitted that it seeks to avoid the agreement because of a perceived change in authority favourable to it in *Soliman.* Not only does the Defendant's sudden tactical shift smack of bad faith, it runs contrary to well-settled black letter contract law. "[O]nce reached, a settlement agreement constitutes a contract that is binding and

conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." *Murphy v. Inst. of Int'l Educ.*, No. 19-CIV-1528 (ALC) (RWL), 2020 WL 6561603. Besides, *Soliman*, which is now pending a petition for rehearing *en banc*, doesn't even apply here, since this case deals with *prerecorded calls*, not the definition of an ATDS system for *live text messages*, as in *Soliman*.

Defendant may have gotten cold feet or felt it did not get as good a deal as it hoped. But that is no basis for avoiding performance under the settlement, which must be enforced.

### B. This Court Should Award Specific Performance and Sanction Defendant

Where a federal court makes "the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal — either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order"—that court is a proper forum for litigating a breach of the settlement agreement. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011). A settlement agreement is essentially a contract, and state-law contract principles govern a federal court's enforcement of a settlement agreement. *See In re Bear Stearns Companies, Inc. Sec., Derivative, & Erisa Litig.*, No. 08 CIV. 2793, 2014 U.S. Dist. LEXIS 131315, at *5 (S.D.N.Y. Sept. 9, 2014). In general, specific performance is appropriate when money damages would be inadequate to protect the expected interest of the injured party and when performance will not impose a disproportionate or inequitable burden on the breaching party. *See Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55 (N.Y. App. Div. 2002).

Here, the Court implicitly retained jurisdiction over the agreement because the parties notified the Court that they reached the aforementioned agreement in principle on May 10, 2023.

6

(ECF No. 53). In response, the Court issued a minute order of May 13, 2023, retaining jurisdiction until June 10 and indicating that it would entertain either a stipulation of dismissal or a response to the motion for default. Indeed, this Court appears to have expressed a desire to retain its jurisdiction by ordering a conference this June 21 "to discuss the motion for entry of default." (ECF No. 57). And no argument has been raised that the court lacks jurisdiction to enforce the agreement, which is well within its *compétence de la compétence*. Specific performance is clearly the appropriate remedy here, as well, ordering the Defendant to pay the agreed-upon consideration to Plaintiff over three months in exchange for dismissal of this action with prejudice.

Additionally, as alluded to above, sanctions in this case are also warranted. Pursuant to 28 U.S.C. § 1927, the Court may require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally pay the attorneys fees and costs reasonably incurred because of such conduct. Sanctions may be imposed under Section 1927 when an attorney acts in bad faith or acts with recklessness and an improper purpose, frivolousness, or to harass the opposing party. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986). In order to sanction under Section 1927, a district court must make a finding that the opposing counsel's conduct "constituted or was tantamount to bad faith." *Roadway Express v. Piper*, 447 U.S. 752, 753 (1980).

District Courts have not hesitated to find bad faith and sanction opposing counsel under Section 1927 in motions seeking to enforce settlement agreements under circumstances nearly identical to here. *See, e.g.*, *In re. Liebowitz*, 206 N.Y.S.3d 721, 729 (2024) (discussing federal court sanction of attorney who filed motion for default judgment in settled case); *Forman v. Mount Sinai Med. Ctr.*, 128 F.R.D. 591, 600 (S.D.N.Y. 1989); *Hubbard v. Yardage Town, Inc.*,

7

No. 05CV0104 IEG(BLM), 2006 WL 1360985, at *3 (S.D. Cal. May 3, 2006), aff'd, 295 F. App'x 169 (9th Cir. 2008) (holding that the defendant "multiplied and extended the litigation when it failed to comply with the settlement agreement.").

The facts of *Forman* are on all fours with the case here. There, counsel for the defendant failed to communicate reasonably with the plaintiff's counsel regarding a settlement agreement, necessitating court intervention. 128 F.R.D. at 600. Just as the Plaintiff sent an email to counsel for the Defendant here outlining how the Defendant's position was untenable, counsel for the defendant there failed to respond or make any assertion why it was refusing to cooperate in the agreement in good faith. *Id.* at 600–601. And, just like the Defendant here moves for Court intervention by making specious legal arguments that found no support or warrant in existing black-letter law while neglecting to articulate its true motive in exploiting a fovourable ruling in *Soliman*, the defendant there lied and stated that a dispute as to expert witness fees was holding up the progress of settlement. *Id.* at 601, 605. This was manifestly false, just like the Defendant here cites to irrelevant authority and fails to cite to contrary black-letter law, let alone any reason for why the holdings cited by Plaintiff should be overturned. *Id.* Defendant there further cited to irrelevant "obstacles"–here, the *Soliman* decision. *Id.* Here, Defendant fails to mention the true reason for why it seeks to invalidate the parties' agreement. And just like there, the Defendant had full notice of the problem, *all the while stringing along the Plaintiff* under the guise of "travel." *Id.* at 601–602. And, like here, in *Forman*, the defendant used "bad faith arguments," (in that case, over disputed payments to an expert), and "attempted to impose a new condition on settlement" to delay the effectuation of settlement. *Id.* at 602. So too here, where counsel for the Defendant used the *Soliman* decision to attempt to re-negotiate the agreement for a lower amount. ("While he is still open to settle, with the recent decision, he feels that $X is punitive.").

Circuit Courts have confirmed the appropriateness of sanctions under 28 U.S.C. § 1927 on facts nearly identical to here, such as refusing to agree to comply with the express terms of a settlement agreement and making false statements regarding such agreement to the court. *See, e.g.*, *Hamilton v. Boise Cascade Exp.*, 519 F.3d 1197, 1203 (10th Cir. 2008); *Hubbard*, 295 F. App'x 169 (9th Cir. 2008). There can be no question that the Court retains the power and must sanction counsel for the Defendant upon circumstances, as courts have under nearly identical circumstances. Plaintiff respectfully requests that, once concluded, he be permitted to file a supplement outlining the excess "attorneys fees and costs" reasonably incurred because of the Defendant's conduct.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, the Plaintiff respectfully requests that the Court find that an enforceable settlement agreement formed on May 10, 2024, order specific performance of that agreement, and sanction counsel for the Defendant under 28 U.S.C. § 1927 for unreasonably and vexatiously multiplying the proceedings in connection with its attempt to avoid enforcement of the same, and grant any other such relief as deemed just and proper.

Dated: **June 17, 2024**

_____/s/_____
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

## **CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on June 17, 2024, which will automatically send a copy to all attorneys of record on the case.

_____/s/_____
Andrew R. Perrong, Esq.
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com
